SULZBERGER (UNITED STATES v.). See Case No. 16,415.

SUMMERL (MORRIS v.). See Case No. 9,837.

SUMMERL (VANDERWICK v.). See Case No. 16,845.

## Case No. 13,604.

### In re SUMMERS.

[3 N. B. R. 84 (Quarto, 21).] [1]

District Court, W. D. Texas.  1869.

HOMESTEAD—"HEAD OF FAMILY"—"CITIZEN"—TEXAS STATUTE—BANKRUPTCY.

1. An unmarried man, a bankrupt, having orphan children bound to him under the apprentice laws of Texas, and keeping house, hiring servants, and conducting a household, claimed a homestead of one hundred acres, as head of a family, by the laws of Texas. The assignee set apart the same, but afterwards made a motion to have the award set aside as unauthorized. *Held*, that the bankrupt was not entitled to such homestead as head of a family.

2. Amount thereof set aside, and fifty acres ordered to be set apart to him as a citizen, under the Texas laws, not to exceed in value five hundred dollars.

---

[1] [Reported by Hon. Henry B. Brown, District Judge, and here reprinted by permission.]

[1] [Reprinted by permission.]

[In the matter of C. M. Summers, a bankrupt.]

DUVAL, District Judge. The question presented in this case arises upon a notice made by John C. West, assignee, to have the homestead allowance of one hundred acres, which he had allotted to the bankrupt under a mistake as to the facts, set aside, and that the same be held subject to the claims of his creditors. The bankrupt was thereupon required to submit himself for examination touching this matter. In reply to interrogatories propounded to him, he states, under oath, that he had never been married. He declares further as follows: "I am the head of a family, and have kept house and owned slaves for years before they were set free, and still keeping house when I filed my petition. I have orphan children bound to me under the apprentice laws, by the county court of Falls county. I had, at the time of filing my petition, hired servants on my premises. I have and keep up all the usual appurtenances of a homestead, supplying provisions and conveniences for my servants, and carrying on my household matters, in all respects, as the head and support of a family, except that I have no wife. I am permanently settled, and regard myself as responsible for the maintenance and care of the orphan children above named. My claim for the exemption was made in good faith, and by the advice of my attorneys, after a fair statement of all the facts."

The bankrupt assumes that the above state of facts constitutes him the head of a family, and authorizes him to claim the constitutional homestead exemption. In this I think he is mistaken. Had the bankrupt adopted the orphan children spoken of by him, in the mode prescribed by the statutes of Texas, my conclusion would be different, but he seems only to have had them apprenticed to him. This apprenticeship did not invest the children with any right or interest in the estate of the bankrupt, or entitle him, as having "a family," to a homestead exemption, within the intent and meaning of the constitution.

The constitutional provision is, that "the homestead of a family, not to exceed two hundred acres of land (not included in a town or city), or any town or city lot or lots, in value not to exceed two thousand dollars, should not be subject to forced sale for any debts hereafter contracted," etc. According to my understanding of this provision, and in so far as it has been construed and acted upon by the supreme court of this state, the right to a homestead resulting from the having "a family," depends either on the fact of marriage, or, in default of marriage, upon the charge and protection of others adopted as children, or of those who, by reason of kindred, have some interest in and claim to the premises of the person with whom they reside. An unmarried man may, from charity or other motives, take into his house and maintain any number of children not related to him in any way, and yet he would not, as I conceive, have such "a family" as was contemplated by the constitution; in order to entitle him or them to a homestead exemption. The decisions of the supreme court of this state, in regard to the question as to what shall be considered a family, with respect to the colonization and immigration laws, do not, I think, apply to the constitutional homestead provision. The policy and objects of the two are widely different.

While it is my opinion, therefore, that the bankrupt, under the facts of this case, cannot claim a homestead under the constitutional provision, I see nothing to prevent him from doing so as a citizen or single man, by virtue of the act of the 26th January, 1839 [Laws Tex. 1838–39, p. 113], which is still in force, as has been decided in the supreme court in the case of Cobbs v. Coleman, 14 Tex. 594. This act provides, among other things, that from and after its passage, "there shall be reserved to every citizen or head of a family in this republic, free and independent of the power of a writ of fieri facias, or other execution issuing from any court of competent jurisdiction whatever, fifty acres of land, including his or her homestead, and improvements not exceeding five hundred dollars in value," etc. The constitution of the state made provision for heads of families, or rather as to the "homestead of a family," and as to them this act of 1839 may be regarded as virtually repealed. But its other provisions remain intact and in full force. While I do not think, therefore, that this bankrupt can properly claim the one hundred acres as being the "homestead of a family" under the constitution, it is my opinion that he is entitled as a "citizen" of this state, to fifty acres, as secured by the act of 1839.

The motion of the assignee is therefore sustained, and he is directed to set aside the exemption of one hundred acres heretofore allowed to the bankrupt, and to restrict the same to fifty acres, including his homestead and improvements, or so much thereof as will not exceed in value the sum of five hundred dollars.

A different conclusion has been reached under a similar provision in the courts of Georgia.

---

SUMMERS (KNOX v.). See Cases Nos. 7,-913 and 7,914.

SUMMERS (McINTOSH v.). See Case No. 8,827.

SUMMERS (THOMAS v.). See Case No. 13,-912.

SUMMERS (UNITED STATES v.). See Case No. 16,416.